NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JOYCE L. GARRISON,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF
ARIZONA,
*Respondent*,

NIKE INC.,
*Respondent Employer*,

ACE AMERICAN INSURANCE COMPANY,
*Respondent Carrier*.

No. 1 CA-IC 16-0037
FILED 1-19-2017

---

Special Action - Industrial Commission
ICA No. 20133-110272
INSCA No. 4A384942361018
The Honorable Robert F. Retzer, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Joyce L. Garrison, Glendale
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark, Barberich, LaMont & Slavin, PC, Phoenix
By Kirk A. Barberich, Danielle S. Vukonich
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

---

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Paul J. McMurdie joined.

---

**J O H N S E N**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award concerning a compensable injury. The claimant, Joyce L. Garrison, argues the administrative law judge ("ALJ") erred by finding her physical condition is stable without permanent impairment. For the reasons that follow, we affirm the award.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2** Garrison worked at the Nike, Inc. Outlet Store in Anthem. In October 2013, a co-worker playfully startled her, causing her to fall. The next thing Garrison knew, her co-workers were helping her off the floor. She thereafter reported a variety of symptoms, including headaches, back pain, ringing in her ears, vertigo and memory and balance problems. Garrison filed a claim for industrial injury and received benefits from Nike's insurance carrier. The claim was closed for benefits without permanent impairment in January 2015.

---

[1] "We will affirm a Commission decision if it is reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶3　　　　Garrison protested the termination of her benefits and requested a hearing, at which the ALJ heard testimony from Garrison, several of her former co-workers and several medical professionals.

¶4　　　　Garrison's family practice doctor testified, as did an orthopedic surgeon and a neurologist, each of whom performed independent medical examinations of Garrison. In addition, Garrison's treating psychiatrist and treating neuropsychologist testified, as did a psychologist who had performed two independent medical examinations.

¶5　　　　Garrison's family practice doctor testified he saw her in October 2014, and then again in June 2015, after her claim was closed. At trial in January 2016, he testified he initially thought Garrison's condition was stationary, but changed his mind after speaking with an expert about the long-lasting effects of head trauma. He testified Garrison had permanent impairment and was "probably not stationary" physically because she had "ongoing" and "relatively consistent" complaints. He said, however, he would defer to a neurologist about whether her symptoms were neurologically based. He also testified he recommended Garrison be treated by a specialist in head trauma.

¶6　　　　The orthopedic surgeon who performed an independent medical examination of Garrison testified he found no neurological deficits and concluded she was stationary without permanent physical impairment and needed no orthopedic supportive care. The neurologist who performed an independent medical examination testified he diagnosed Garrison with minor head trauma, and that her current issues were psychological rather than physical. He concluded Garrison was stationary without permanent impairment.

¶7　　　　Garrison's treating psychiatrist testified he diagnosed Garrison with mood disorder and anxiety disorder with depression related to her industrial injury. He stated Garrison was stationary with permanent psychiatric impairment and needed supportive care, including counseling by a therapist and medication management, for at least one year. Garrison's neuropsychologist testified she diagnosed Garrison with anxiety disorder and major depressive disorder related to her industrial injury. She testified Garrison was stationary with permanent psychological impairment. She further testified that Garrison needed supportive care.

¶8　　　　The psychologist who performed independent medical examinations of Garrison testified she diagnosed her with adjustment disorder with anxiety related to her industrial injury, but said she could not

reliably link Garrison's complaints to her industrial injury. Her opinion was that Garrison was most likely stationary without permanent psychological impairment, and needed no supportive care award, but she agreed that six more visits with the neuropsychologist and three more visits with the psychiatrist would be reasonable.

¶9 In the Decision Upon Hearing, the ALJ found Garrison was not entitled to additional orthopedic or neurological care, and that her physical condition was stationary without permanent physical impairment. The ALJ further found, however, that Garrison had "[a]n unscheduled permanent partial disability for her mental condition," and therefore was entitled to supportive care for that condition. Garrison, Nike and Nike's insurance carrier requested review; Garrison protested the ALJ's findings concerning her physical condition and the others protested the findings concerning her psychological condition. The ALJ affirmed the decision. Garrison's special action timely followed. Neither Nike nor its insurer sought further review.

¶10 This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2017), 23-951 (2017) and Rule 10 of the Arizona Rules of Procedure for Special Actions.[2]

## DISCUSSION

¶11 In reviewing the ICA's awards and findings, we defer to the ALJ's factual findings and review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). The ALJ has discretion to resolve any conflicts in the evidence, *see Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975), and is the sole judge of witness credibility. *Henderson-Jones v. Indus. Comm'n*, 233 Ariz. 188, 191, ¶ 9 (App. 2013). As long as the ALJ's findings are not unreasonable, this court will not disturb them. *Hackworth v. Indus. Comm'n*, 229 Ariz. 339, 343, ¶ 9 (App. 2012).

¶12 In his Decision Upon Hearing, the ALJ summarized the evidence offered by each medical professional. After examining the conflicting evidence, the ALJ accepted the opinions of the orthopedic surgeon and the neurologist regarding whether Garrison suffered any permanent physical impairment, and found her stationary without permanent physical impairment.

---

[2] Absent material revision after the relevant date, we cite a statute's current version.

¶13          Garrison argues the ALJ's findings should be overturned because the physicians who performed her independent medical examinations are biased because they receive "the bulk of their income" from Workers' Compensation cases and because they based their findings on incorrect reports and medical history. She also contends the orthopedic surgeon was not qualified and the neurologist failed to order important tests and did not spend enough time examining her to fully evaluate her condition. Garrison cross-examined the professionals about their purported biases, and offered evidence that supported her contentions that the expert witnesses who testified against her relied on erroneous reports. In her brief, she does not elaborate on those arguments; nor does she explain why the orthopedic surgeon is not qualified or which test the neurologist should have administered.[3]

¶14          In his Decision Upon Hearing, the ALJ noted the qualifications of each expert, outlined the evidence presented, and accepted the opinions he found most credible. Because the ALJ has discretion to resolve any conflicts in evidence, *Perry*, 112 Ariz. at 398, and because his findings are supported by reasonable and substantial evidence, we cannot conclude the ALJ's decision was unreasonable. *See Hopper v. Indus. Comm'n*, 27 Ariz. App. 732, 735 (1976).

¶15          Garrison also argues the ALJ should have considered the "most recent" research about head injuries, and asks us to allow her to see a head-trauma specialist and consider that specialist's opinion before determining her award. This court, however, cannot consider evidence not presented to the ALJ. *See O'Neal v. Indus. Comm'n*, 13 Ariz. App. 550, 552 (1971).

¶16          Finally, Garrison requests reimbursement for various out-of-pocket medical and transportation expenses, attorney's fees, loss of consortium benefits and insurance co-payments resulting from her industrial injury. Because Garrison did not present these issues to the ALJ, we may not address them. *See* A.R.S. § 23-951(B) (2017) (review "shall be limited to determining whether or not the commission acted without or in

---

[3]          Garrison offers similar contentions about the psychologist who performed the independent medical examinations of her psychological condition. She does not argue, however, that the ALJ erred in finding her stationary with permanent psychological impairment, or in his supportive care award.

excess of its power and, if findings of fact were made, whether or not such findings of fact support the award, order or decision.").

## CONCLUSION

¶17        For the foregoing reasons, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:  AA